**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-02517-CNS-STV

JESSICA ROCKWELL, CLAUDIA SAMPEDRO, TARA LEIGH PATRICK a/k/a CARMEN ELECTRA, PAOLA CAÑAS, ROSA ACOSTA, and URSULA MAYES,

Plaintiffs,

v.

MAR-LAU ENTERPRISES, INC. d/b/a M.G.M'S RESTAURANT & LOUNGE; and DOES 1-10,

Defendants.

---

**PLAINTIFFS' RULE 55 MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT MAR-LAU ENTERPRISES, INC. D/B/A M.G.M'S RESTAURANT & LOUNGE AND MEMORANDUM OF LAW IN SUPPORT OF THEREOF**

---

NOW COMES ALL Plaintiffs, ("Plaintiffs"), by and through their counsel of record, and in support of its Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55, state as follows: Plaintiffs initiated these proceedings on or about September 27, 2022, by the filing of their complaint against Defendant MAR-LAU ENTERPRISES, INC. ("Mar-Lau") (Dkt. 1).

Defendant Mar-Lau was duly served with a copy of the Complaint and Summons on or about October 16, 2022, via process server Brittney Pierce, from ANL Service Of Process & Investigations, LLC. (Dkt. 8). More than twenty (20) days have elapsed since Defendant was served, and Defendant has failed to answer, plead, or otherwise defend the allegations of Plaintiffs' Complaint.

Defendant's failure to defend and deny the allegations of Plaintiffs' complaint results in those allegations being admitted and Plaintiffs therefore move the Court for the entry of Default Judgment.

Plaintiffs' claim of damages is for a sum that is made certain by computation and is more specifically set forth in its supporting Memorandum of Law.

WHEREFORE, the Plaintiffs respectfully request that this Court enter an Order of Default Judgment, for that amount set forth and made certain in its supporting Memorandum of Law.

# TABLE OF CONTENTS

**STATEMENT OF UNDISPUTED FACTS** ........................................................................ 1

**ARGUMENT** ........................................................................................................................ 1

I. STANDARD ON MOTION FOR DEFAULT JUDGMENT ....................................... …..1

II. THE COURT HAS BOTH SUBJECT MATTER JURISDICTION & PERSONAL JURSIDICTION ........................................................................................................ 3

III. PLAINTIFFS ARE ENTITLED TO JUDGMENT ON COUNTS I AND II OF THE COMPLAINT FOR VIOLATION OF THE LANHAM ACT ........................................... ..5

A. Violation of the Lanham Act, 15 U.S.C. § 1125(a)(A)(1)(B): (False Advertising) (Count 1)…………………………………………...………………………………6

B. Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A): (False Endorsement/Association) (Count 2)……………………………………...……….8

IV. PLAINTIFFS ARE ENTITLED TO JUDGMENT ON COUNT III OF THE COMPLAINT FOR VIOLATION OF STATE COMMON LAW MISAPPROPRIATION OF LIKENESSES; VIOLATION OF RIGHT TO PRIVACY; RIGHT OF PUBLICITY ..................................... 10

V. PLAINTIFFS ARE ENTITLED TO JUDGMENT ON COUNT IV FOR NEGLIGENCE AND RESPONDEAT SUPERIOR.......................................................................................... 12

VI. PLAINTIFFS ARE ENTITLED TO DAMAGES & COSTS RELATING TO DEFENDANTS' VIOLATIONS OF LAW................................................................................ 14

**CONCLUSION** ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Am. Home Prods. Corp. v. Johnson & Johnson*, 577 F.2d 160, 165 (2d Cir.1978)………………..6

*Archer v. Eiland*, 64 F. App'x 676, 679 (10th Cir. 2003)……………………………………….3

*Arnold v. Treadwell*, 642 F. Supp. 2d 723, 730 (E.D. Mich. 2009)…………………………………9

*BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1099 (7th Cir. 1994)……………….15

*Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010)……………………………………………3

Cody Reaves, *Show Me the Money: Determining a Celebrity's Fair Market Value in a Right of Publicity Action*, 50 U. Mich. J. L. Reform 831, 834 (2017)……………………………………14

*Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 n. 3 (10th Cir.1999)……………..........6

*Dallas Buyers Club, LLC v. Cordova*, 81 F. Supp. 3d 1025, 1032 (D. Colo. 2015)………………4,5

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S.23, 28 (2003)………………………5

*Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 773 (10th Cir. 1997)……4

*Fid. & Plate Glass Ins. Co. v. Patterson*, 86 Colo. 580, 586, 284 P. 334, 336 (1930)…………....14

*Grease Monkey Int'l, Inc. v. Montoya*, 904 P.2d 468, 473 (Colo.1995)…………………………..14

*Hutchinson v. Pfeil*, 211 F.3d 515, 522 (10th Cir.2000)…………………………………………7

*Intermountain Stroke Center, Inc. v. Intermountain Health Care, Inc.* (10th Cir. 2016)……….....6

*Joe Dickerson & Associates, LLC v. Dittmar* (Colo. 2001)……………………………………10

*La Resolana Architects*, PA, 555 F.3d at 1181–82…………………………………………………7

*Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014)…………...5, 6

*Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011)……………………………4

*Metropolitan Gas Repair Service, Inc. v. Kulik*, 621 P.2d 313, 317 (Colo.1980)…………….12, 13

*Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003)………………………………...2, 3

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)…………………………..4

*POM Wonderful LLC v. Coca–Cola Co.*, ––– U.S. ––––, 134 S.Ct. 2228, 2234, 189 L.Ed.2d 141 (2014)……………………………………………………………………………………5

*Purzel Video GmbH v. Biby*, 13 F. Supp. 3d 1127, 1135 (D. Colo. 2014)…………………………3

*Raleigh v. Performance Plumbing and Heating* (Colo. 2006)…………………………………12, 14

*Res. Developers, Inc. v. Statue of Liberty–Ellis Island Found., Inc.*, 926 F.2d 134, 139 (2d Cir.1991)……………………………………………………………………………………6

*Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 942 (7th Cir. 1989), *cert. denied*, 493 U.S. 1075 (1990)…………………………………………………………………………………..15

*Ruplinger v. Rains (In re Rains)*, 946 F.2d 731, 732 (10th Cir. 1991)……………………………..2

*Sally Beauty Co., Inc. v. BeautyCo, Inc.*, 304 F.3d 964, 980 (10th Cir.2002)………………………5

*Smith v. City & County of Denver*, 726 P.2d 1125, 1127 (Colo.1986)……………...…………12, 13

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.1997)……………………6

*Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo.1987)……………………………………….12

*Trial Lawyers College v. Gerry Spences Trial Lawyers College at Thunderhead Ranch* (D. Wyo., Mar. 29, 2022, No. 1:20-CV-80-JMC) 2022………………………………………………......8

*United States v. Bauer*, No. 18-cv-00034-PAB-NRN, 2020 WL 5076754, at *2 (D. Colo. Aug. 25, 2020)…………………………………………………………………………………..3

*Villanueva v. Account Discovery Sys.*, LLC, 77 F. Supp. 3d 1058, 1066 (D. Colo. 2015)…………3

*Williams v. Life Sav. & Loan, 802 F.2d 1200*, 1203 (10th Cir. 1986)…………………………...2, 3

*World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1140 (10th Cir.2006)……5

*Zoller Labs., LLC v. NBTY, Inc.*, 111 Fed.Appx. 978, 982 (10th Cir.2004)…………………...….6

**Statutes**

§ 43(a) of the Lanham Act……………………………………………………………5, 6

15 U.S.C. § 1114……………………………………………………………………………..8

15 U.S.C. § 1117(a)……………………………………………………………………….14

15 U.S.C. § 1125(a)…………………………………………………………...………8

15 U.S.C. § 1125(a)(1)(A)………………………………………………………………5, 8

15 U.S.C. § 1125(a)(1)(B)……………………………………………………….…5, 6, 8

15 U.S.C. § 1125(a)(A)(1)(B)…………………………………………………………...6

15 U.S.C. § 1127……………………………………………………………………......5, 9

28 U.S.C. § 1331…………………………………………………………………………...3

Federal Practice and Procedure § 2688…………………………………………….……3

Restatement (Second) of Torts § 302………………………………………………..…13

**Rules**

Fed. R. Civ. P. 4(h)(1)(B)……………………………………………………………………..4

Fed. R. Civ. P. 55……………………………………………………………………..…2

Fed. R. Civ. P. 55(a)………………………………………………………………….…2

Fed. R. Civ. P. 55(b)(1)-(2)……………………………………………………………...2

Federal Rule of Civil Procedure 4……………………………………………...……..4

Plaintiffs submit this Memorandum of Law in Support of their Motion pursuant to Rule 55 of the Federal Rules of Civil Procedure for a Default Judgment against Defendant MAR-LAU ENTERPRISES, INC. d/b/a M.G.M's RESTAURANT & LOUNGE (hereinafter "Defendant" or "M.G.M").

**STATEMENT OF UNDISPUTED FACTS**

As set forth in Plaintiffs' Complaint ("Compl."; Dkt. 1), each Plaintiff is a successful model, actress and/or businesswoman who earns her livelihood promoting her image, likeness and/or identity (collectively, "Image") to select clients, commercial brands, and media and entertainment outlets. (Compl., ¶¶ 35-45). During the relevant time period Defendant owned M.G.M's Restaurant & Lounge ("M.G.M"), in Denver, Colorado, where they engaged in the business of entertaining its patrons with alcohol, food service, and music. (*Id.*, ¶ 30). In furtherance of their promotion of M.G.M, MAR-LAU ENTERPRISES, INC. ("Mar-Lau") owned, operated and controlled M.G.M's social media accounts, including the M.G.M's Facebook, Twitter, and Instagram accounts during the relevant time period, and used such social media to post advertisements for M.G.M. (*Id.*, ¶¶ 31-32). Many of these advertisements contained Images of Plaintiffs, which had been misappropriated, and intentionally altered, by the Defendant to make it appear that Plaintiffs worked at or endorsed M.G.M. (*Id.*, ¶¶ 46-128). In the case of each Plaintiff, such appearance was false, and occurred without any Plaintiff's knowledge, consent or authorization, or payment to any Plaintiff. (*Id.*, ¶¶ 70, 81, 91, 103, 114, 125).

**ARGUMENT**

## I. STANDARD ON MOTION FOR DEFAULT JUDGMENT

As submitted herewith, on or about December 8, 2022, upon request from Plaintiffs' counsel, the Clerk's Entry of Default was entered as to Mar-Lau Enterprises, Inc. for failing to

respond to the complaint following service of summons and complaint. (Dkt. 10). As such, Plaintiffs respectfully submit that Mar-Lau's liability has been established on each of Plaintiffs' causes of action. Default judgment may be entered against a party who fails to appear or otherwise defend. (Fed. R. Civ. P. 55.) Federal Rule of Civil Procedure 55 mandates a two-step process for the entry of a default judgment. First, a party must obtain a Clerk's entry of default. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Second, the party must either request the Clerk to enter default judgment, if the claim is for a "sum certain," or, "[i]n all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(1)-(2).

The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (citation omitted). In exercising that discretion, the court recognizes that "[s]trong policies favor resolution of disputes on their merits." *Ruplinger v. Rains (In re Rains)*, 946 F.2d 731, 732 (10th Cir. 1991) (citation omitted). "[D]efault judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." Id. The remedy serves to protect a plaintiff from "interminable delay and continued uncertainty as to h[er] rights." Id. at 733.

Before entering default judgment, the court must consider whether it has subject matter jurisdiction over the action and personal jurisdiction over the defaulting defendant. *Williams v. Life Sav. & Loan, 802 F.2d 1200,* 1203 (10th Cir. 1986). Next, the court must consider whether the well-pleaded allegations of fact—which are admitted by a defendant upon default—support a judgment on the claims against the defaulting defendant. See *Olcott*, 327 F.3d at 1125. If the court

finds that "the unchallenged facts create a legitimate basis for the entry of a [default] judgment," default judgment may then be entered. *Villanueva v. Account Discovery Sys.*, LLC, 77 F. Supp. 3d 1058, 1066 (D. Colo. 2015) (citation omitted).

The court must next determine "whether the unchallenged facts constitute a legitimate cause of action," such that a judgment should be entered. *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quoting 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 2688, at 63 (3d ed. 1998)). For purposes of determining whether default judgment should be entered, the well-pleaded allegations from the complaint relating to liability are taken as true. *Archer v. Eiland*, 64 F. App'x 676, 679 (10th Cir. 2003) (citation omitted); see *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) ("Defendant, by his default, admits the plaintiff's well-pleaded allegations of fact[.]") (alteration and citation omitted); *United States v. Bauer*, No. 18-cv-00034-PAB-NRN, 2020 WL 5076754, at *2 (D. Colo. Aug. 25, 2020) ("A party may not simply sit out the litigation without consequence. One such consequence is that, upon the entry of default against defendants, the well-pleaded allegations in the complaint are deemed admitted.") (internal citation omitted). Undisputed facts set forth by the movant in affidavits and exhibits are also deemed admitted. *Purzel Video GmbH v. Biby*, 13 F. Supp. 3d 1127, 1135 (D. Colo. 2014) (citation omitted).

## II. THE COURT HAS BOTH SUBJECT MATTER JURISDICTION & PERSONAL JURSIDICTION

In determining whether the entry of a default judgment is warranted here, the court must first consider whether it has both subject matter and personal jurisdiction. *Williams*, 802 F.2d at 1203. Plaintiffs allege subject matter jurisdiction predicated upon original federal question jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 as Plaintiffs have each individually stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)(B). (Compl. ¶ 16.)

The entry of default judgment in a civil action likewise requires personal jurisdiction over the defaulting defendants. See *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) ("A default judgment in a civil case is void if there is no personal jurisdiction over the defendant."). However, before analyzing personal jurisdiction, the court must first address the adequacy of service of process. See *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *Okla. Radio Assocs. v. Fed. Deposit Ins. Corp.*, 969 F.2d 940, 943 (10th Cir. 1992)

The Complaint identifies Defendant as a Colorado corporation. (Compl. ¶¶ 18, 28.) Federal Rule of Civil Procedure 4 permits service of a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Here, Plaintiffs served Defendant on October 16, 2022. Service was effectuated by personally serving the Defendant's manager, Alacelia (manager of M.G.M's), who accepted service at approximately 8:17 pm MDT. Plaintiffs filed an Affidavit of Service on October 20, 2022. Accordingly, Plaintiffs have properly served Defendant.

In the Tenth Circuit, a movant "need only make a prima facie showing [of personal jurisdiction] if the motion [for default judgment] is decided only on the basis of the parties' affidavits and other written materials." *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 773 (10th Cir. 1997). As alleged in the pleadings, Defendant is a resident of Colorado. Service was proper. As such, the court may exercise personal jurisdiction over Defendant in this matter. See *Dallas Buyers Club, LLC v. Cordova*, 81 F. Supp. 3d 1025, 1032 (D.

Colo. 2015) ("As Defendant resides in the District of Colorado, the Court has personal jurisdiction over him.").

## III. PLAINTIFFS ARE ENTITLED TO JUDGMENT ON COUNTS I AND II OF THE COMPLAINT FOR VIOLATION OF THE LANHAM ACT

"The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,'" (*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S.23, 28 (2003) (quoting 15 U.S.C. § 1127)), "to protect persons engaged in … commerce against unfair competition; [and to] … prevent fraud and deception in such commerce…." 15 U.S.C. § 1127 (as quoted in *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014)). In furtherance of these goals, 15 U.S.C. § 1125(a)(1)(A) specifically prohibits the use of:

> any word, term, name, symbol, or device, or any combination thereof … which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person….

15 U.S.C. § 1125(a)(1)(A). Similarly, 15 U.S.C. § 1125(a)(1)(B), prohibits the use of:

> any word, term, name, symbol, or device, or any combination thereof … which…in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities….

"The Lanham Act creates a cause of action for unfair competition through misleading advertising or labeling." *POM Wonderful LLC v. Coca–Cola Co.*, —— U.S. ——, 134 S.Ct. 2228, 2234, 189 L.Ed.2d 141 (2014); see *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1140 (10th Cir.2006) ("[U]nder the Lanham Act, it was required to demonstrate ... 'that the defendant made material false or misleading representations of fact in connection *784 with the commercial advertising or promotion of its product [ ]....' " (quoting *Sally Beauty Co., Inc. v. BeautyCo, Inc.*, 304 F.3d 964, 980 (10th Cir.2002))). Section 43(a) of the statute, 15 U.S.C. § 1125(a), "creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false

advertising, § 1125(a)(1)(B).” *Lexmark Intern., Inc.* 572 U.S. 118, 130 (2014); see *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 n. 3 (10th Cir.1999) (“The Act ‘principally provides for two distinct causes of action: false designation of origin or source, known as “product infringement,” and false description or representation, known as “false advertising.” ’ ” (quoting *Res. Developers, Inc. v. Statue of Liberty–Ellis Island Found., Inc.*, 926 F.2d 134, 139 (2d Cir.1991))).

**A. Violation of the Lanham Act, 15 U.S.C. § 1125(a)(A)(1)(B) (False Advertising) (Count 1)**

To state a false-advertising claim under § 43(a) of the Lanham Act, a plaintiff must plausibly allege:

> (1) that [the] defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff.

*Intermountain Stroke Center, Inc. v. Intermountain Health Care, Inc.* (10th Cir. 2016) 638 Fed.Appx. 778, 784. “ [P]anels of this court have explained that “ ‘Section 43(a) ... encompasses more than literal falsehoods,’ because otherwise, ‘clever use of innuendo, indirect intimations, and ambiguous suggestions could shield the advertisement from scrutiny precisely when protection against such sophisticated deception is most needed.’ ” *Id.*, citing *Cottrell*, 191 F.3d at 1252 (quoting *785 *Am. Home Prods. Corp. v. Johnson & Johnson*, 577 F.2d 160, 165 (2d Cir.1978)); see also *Zoller Labs., LLC v. NBTY, Inc.*, 111 Fed.Appx. 978, 982 (10th Cir.2004) (unpublished) (“To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers.” (emphases added) (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.1997))). More specifically, the Lanham Act contemplates two variants of actionable advertising representations: (1) those that

are literally false, and (2) those that, while literally true, are likely to mislead and confuse consumers. See *La Resolana Architects*, PA, 555 F.3d at 1181–82 (holding there was "no basis" for a Lanham Act claim, given the district court's factual findings that "neither [of the defendants] made any false or misleading oral or written statements or representations"); see also *Hutchinson v. Pfeil*, 211 F.3d 515, 522 (10th Cir.2000) (noting the two different categories and collecting cases).

Here, the Complaint alleges that Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap, and that they vie for the same dollars from the same demographic consumer group. (Compl. ¶ 151). Further, Plaintiffs allege that Defendant used Plaintiffs' image and likeness on their social media accounts to promote Defendant's establishment in order create the false perception that each Plaintiff has consented or agreed to promote, advertise, market, and/or endorse M.G.M. (Compl. ¶¶ 48, 65, 70, 76, 81, 87, 92, 98, 103, 109, 114, 120, 125, 131, 133-135). Plaintiffs further alleged that "The use of the image falsely implied that [each Plaintiff] represents M.G.M and that she authorized M.G.M to use her image for promotional and marketing purposes. The images were used without the consent of [Plaintiff] and were manipulated to intentionally give the impression that [Plaintiff] is a spokesperson for M.G.M, working at M.G.M, and/or that she endorses M.G.M." (*Id.* at ¶¶ 65, 76, 87, 98, 109, 120). Further, Plaintiffs alleged:

> 132. Defendants' use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendants' businesses, M.G.M, and/or M.G.M's events and activities as described in this Complaint was false and misleading.
>
> 133. Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with M.G.M, endorsed Defendants' businesses, M.G.M or M.G.M's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendants' businesses or M.G.M's events and activities

> and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.
>
> 134. Defendants' false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of M.G.M, as to the general quality of attendees and participants of M.G.M and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with M.G.M, endorsed Defendants' businesses, M.G.M or M.G.M's events or activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and market Defendants' businesses or M.G.M's events and activities.

Thus, based on Plaintiffs' well-plead allegations, Defendant should be held liable to Plaintiffs for violation of the Lanham Act, 15 U.S.C. § 1125(a) (False Advertising) because Defendant's advertisements depicting Plaintiffs' image and likes were tantamount to statements that were either literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers.

**B. Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A): (False Endorsement/Association) (Count 2)**

Subsection (a)(1)(A) creates liability for statements about "affiliation, connection, or association" of goods, and describes the cause of action known as "false association." Unlike an infringement claim, a false association claim does not require that a plaintiff possess or have used a trademark in commerce. Compare 15 U.S.C. § 1125(a) with 15 U.S.C. § 1114. The injury, for standing purposes, derives from the use in commerce of an offending word, term, name, symbol, or device of a false or misleading description or representation of fact. 15 U.S.C. § 1125(a)(1)(A). The same goes for advertisements with the offending word, term, name, symbol, or device. *Id.* at § 1125(a)(1)(B). *Trial Lawyers College v. Gerry Spences Trial Lawyers College at Thunderhead Ranch* (D. Wyo., Mar. 29, 2022, No. 1:20-CV-80-JMC) 2022 WL 2718075, at *8

The statute requires that Plaintiffs be "likely to be damaged" by Defendant's use in commerce and advertisement of their image and likeness. § 1125(a)(1). A couple of background principles frame whether a party has Article III standing under § 1125(a). First, the claim must fall

within the "zone of interests" the statute protects. *Lexmark Int'l, Inc.*, 572 U.S. at 129 (2014). The zone of interests' scope is not especially demanding, and the party pleading receives the "benefit of any doubt." Id. at 130. This statute's purpose statement—according to the Supreme Court—is "unusual, and extraordinarily helpful." *Id.* at 131. Thus, identifying the statute's zone of interests "requires no guesswork." *Id.* That purpose statement provides:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; *to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks;* and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

15 U.S.C. § 1127. (Emphasis added.). As to the zone of interests, one enumerated purpose of the Lanham Act is "making actionable the deceptive and misleading use of marks" in "commerce within the control of Congress." 15 U.S.C. § 1127. The "mark" can be a person's identity. See *Arnold v. Treadwell*, 642 F. Supp. 2d 723, 730 (E.D. Mich. 2009). Thus, the Lanham Act authorizes those "likely to be damaged," § 1125(a)(1), by the "deceptive and misleading use of [Defendant Spence's name]," § 1127, to sue for such use.

Plaintiffs' complaint adequately alleges injury for standing purposes. As set forth in the Complaint, Defendant used Plaintiffs' Images in advertising, *inter alia*, to create the false impression with the public that Plaintiffs were employees at M.G.M's or promoted or were otherwise affiliated with same. (*See, e.g.*, Compl. ¶¶ 52-53). This was done to promote and attract clientele to M.G.M's, and thereby generate revenue for the Defendant. (*Id.*, ¶¶ 51, 53, 148). This was done despite Defendant's awareness that no Plaintiff was an employee at M.G.M's, promoted the Club, or was otherwise affiliated with the Club. (*Id.*, ¶ 54). Defendant embarked on this marketing scheme in order to confuse consumers as to as to each Plaintiff's employment as an

employee at the Club, or sponsorship thereof. (*Id.*, ¶ 134). Moreover, "Defendants' use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that M.G.M's advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs." (*Id.*, ¶ 153.). "Further, any failure, neglect or default by Defendants will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs." (*Id.*, ¶158.). Based on Plaintiffs well-plead allegations, Plaintiffs submit

## IV. PLAINTIFFS ARE ENTITLED TO JUDGMENT ON COUNT III OF THE COMPLAINT FOR VIOLATION OF STATE COMMON LAW MISAPPROPRIATION OF LIKENESSES; VIOLATION OF RIGHT TO PRIVACY; RIGHT OF PUBLICITY

Count III states a claim in favor of Plaintiffs and against Defendant for violation of Colorado's Common Law Misappropriation of Likenesses (Violation of Right to Privacy; Right of Publicity). The tort of invasion of privacy by appropriation of another's name or likeness is cognizable under Colorado law. *Joe Dickerson & Associates, LLC v. Dittmar* (Colo. 2001) 34 P.3d 995, 997. "The elements of this tort are: (1) the defendant used the plaintiff's name or likeness; (2) the use of the plaintiff's name or likeness was for the defendant's own purposes or benefit, commercially or otherwise; (3) the plaintiff suffered damages; and (4) the defendant caused the damages incurred." *Id.*

Each Plaintiff has pleaded in their complaint, and substantiated by each Plaintiff's respective declarations attached to this motion, all elements under the under Colorado law have

been established:

(1) Defendant used each Plaintiffs' image and likeness. (Compl. ¶¶ 1, 62, 67, 78, 89, 100, 111, 122, 152); Jessica Rockwell's accompanying Declaration ("Rockwell Dec.") ¶¶ 9-15); Claudia Sampedro's accompanying Declaration ("Sampedro Dec.") ¶¶ 9-15; Carmen Electra's accompanying Declaration ("Electra Dec.") ¶¶ 9-15; Paola Cañas' accompanying Declaration ("Cañas Dec.") ¶¶ 9-15; Rosa Acosta's accompanying Declaration ("Acosta Dec.") ¶¶ 9-15; and Ursula Mayes' accompanying Declaration ("Mayes Dec.") ¶¶ 9-15.

(2) Defendant used each Plaintiffs' image and likeness for the defendant's own purposes or benefit, commercially or otherwise. (Compl. ¶¶ 13, 47, 53, 56, 137, 148-149, 165, 172), (Rockwell Dec. ¶¶ 9-15); (Sampedro Dec. ¶¶ 9-15); (Electra Dec. ¶¶ 9-15); (Cañas Dec. ¶¶ 9-15); (Acosta Dec. ¶¶ 9-15); and (Mayes Dec. ¶¶ 9-15).

(3) The Plaintiffs suffered damages. ((Compl. ¶¶ 185-186); (Rockwell Dec. ¶¶ 16-17); (Sampedro Dec. ¶¶ 16-17); (Electra Dec. ¶¶ 16-17); (Cañas Dec. ¶¶ 16-17); (Acosta Dec. ¶¶ 16-17); and (Mayes Dec. ¶¶ 16-17); and expert Stephen Chamberlin's accompanying Declaration ("Chamberlin Dec.") ¶¶ 17, 20, 23, 26, 29, 32, 33). According to Plaintiffs' expert, Stephen Chamberlin, each model has suffered the following actual damages:

| Model | Day Rate | # Images | Usages *A = Advertising, SM = Social Media TP = Third Party* | Damages |
|---|---|---|---|---|
| Jessica Rockwell | $5,000 | 1 | A, SM, TP | $15,000 |
| Claudia Sampedro | $10,000 | 2/1 Day | A, SM | $20,000 |
| Carmen Electra | $50,000 | 1 | A, SM, TP | $150,000 |
| Paola Canas | $7,500 | 1 | A, SM | $15,000 |
| Rosa Acosta | $7,500 | 1 | A, SM, TP | $22,500 |
| Ursula Mayes | $7,500 | 1 | A, SM | $15,000 |
| TOTAL | | | | $237,500 |

(4) The Defendant caused the damages incurred. (Compl. ¶¶ 144-145); (Rockwell Dec. ¶¶ 16-17); (Sampedro Dec. ¶¶ 16-17); (Electra Dec. ¶¶ 16-17); (Cañas Dec. ¶¶ 16-17); (Acosta Dec. ¶¶ 16-17); and (Mayes Dec. ¶¶ 16-17); and (Chamberlin Dec. ¶¶ 8, 17, 20, 23, 26, 29, 32, 33).)

Thus, judgment for each Plaintiff should be entered on their third cause of action as outlined above.

## V. PLAINTIFFS ARE ENTITLED TO JUDGMENT ON COUNT IV FOR NEGLIGENCE AND RESPONDEAT SUPERIOR

Plaintiffs' negligence and *respondeat superior* claims alleges three distinct acts that show that Defendant was negligent and has liability under a theory of *respondeat superior* (vicarious liability): 1) that "Defendant was negligent in their failure to promulgate policies and procedures concern the misappropriate of the image of models that were used on the M.G.M's Website and social media accounts;" 2) an alternative theory that "Defendant negligently failed to enforce" policies prohibiting the misappropriation of images; and 3) "Defendant had a duty to refrain from appropriating the image of those with whom it had not contracted, and had not paid." The Complaint alleges that employees posted the misappropriated images on Defendant's website and social media despite policies prohibiting them from doing so. (Compl. ¶¶ 58, 184) This is materially similar to an employer being responsible according to respondeat superior for an unlawful action an employee takes during the course of their employment.

"To obtain submittal of a negligence claim to a jury, the plaintiff must establish a prima facie case demonstrating the following elements: (1) the existence of a legal duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach of duty caused the injury." *Raleigh v. Performance Plumbing and Heating* (Colo. 2006) 130 P.3d 1011, 1015. "Thus, the first question in any negligence case is whether the defendant owed a legal duty to protect the plaintiff from injury." *Id,* citing *Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo.1987). "The question of whether a defendant owes a plaintiff a duty to act to avoid injury is a question of law to be determined by the court." *Id.*, citing *Smith v. City & County of Denver*, 726 P.2d 1125, 1127 (Colo.1986). "The court determines, as a matter of law, the existence and scope of the duty—that is, whether the plaintiff's interest that has been infringed by the conduct of the defendant is entitled to legal protection." *Id.*, citing *Metropolitan Gas Repair Service, Inc. v.*

*Kulik*, 621 P.2d 313, 317 (Colo.1980). "In determining whether the law imposes a duty on a particular defendant, many factors are to be considered. These factors may include, for example, 'the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the [defendant's] conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the [defendant].' *Id.*, citing *Smith*, 726 P.2d at 1127.

Here, Plaintiffs allege that Defendant had a duty to not misappropriate their images and that Plaintiff had a duty to put into place policies to prevent the misappropriation of their images. It is well established that "[i]n general, anyone who does an affirmative act is under a duty to other to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act, and "where there is an affirmative act that affects the interest of another, there is a duty not to be negligent with respect to the doing of the act." Restatement (Second) of Torts § 302 cmt. a (1965).

In this case, it is foreseeable that when a nightclub misuses the image or likeness of another individual, that the misuse of the image or likeness will result in harm. Moreover, there is little burden on the Defendant to guard against misappropriation because doing so would not impose on businesses any responsibility not already assigned to them but would simply incorporate existing obligations not to misappropriate Plaintiffs' images and likenesses. Finally, the consequences of placing this burden on the Defendant is relatively minor because it is no more expensive or burdensome to comply with then the current statutory schemes created by the federal and state governments. Therefore, the general duty to act with reasonable care extends to a business posting images of others without permission on social media accounts and websites as part of an advertising campaign.

"Well-established in Colorado law, the doctrine of respondeat superior is based on the theory that the employee acts on behalf of the employer when the employee is within the scope of his or her employment. In such circumstances, the employer is vicariously liable for the employee's negligent acts." *Raleigh*, 130 P.3d at 1019, citing *Grease Monkey Int'l, Inc. v. Montoya*, 904 P.2d 468, 473 (Colo.1995), *Fid. & Plate Glass Ins. Co. v. Patterson*, 86 Colo. 580, 586, 284 P. 334, 336 (1930). Here, Plaintiffs have alleged that Defendant and/or its employees were acting within their scope of employment when posting Plaintiffs' misappropriated images of Plaintiffs.' Thus, Plaintiffs should be entitled to default judgment on their fourth cause of action.

## VI. PLAINTIFFS ARE ENTITLED TO DAMAGES & COSTS RELATING TO DEFENDANTS' VIOLATIONS OF LAW

"The most obvious measure for assessing actual damages is the fair market value of the use of the plaintiff's identity." See e.g., Cody Reaves, *Show Me the Money: Determining a Celebrity's Fair Market Value in a Right of Publicity Action*, 50 U. Mich. J. L. Reform 831, 834 (2017). [1] Submitted herewith as **Exhibit B** is the Declaration of Plaintiffs' valuation expert Stephen Chamberlin, who was engaged to evaluate and value retroactively the compensation each Plaintiff would and should have received for the use of her images by Defendant (the "Chamberlin Decl."). Mr. Chamberlin provides in his declaration the basis of his valuation opinion as to each Plaintiff. As further detailed in his declaration, Mr. Chamberlin has opined that Plaintiffs' damages based upon a fair market value analysis total $ 237,500.

In addition, pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to costs and attorneys' fees incurred in this action due to Defendant's willful misappropriation and publication of their images in advertising. The Lanham Act allows for fees in "exceptional" cases (15 U.S.C. § 1117(a)), which encompasses cases where the infringing activities are "malicious, fraudulent,

[1] Available at: http://repository.law.umich.edu/mjlr/vol50/iss3/15)

deliberate or willful." *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 942 (7th Cir. 1989), *cert. denied*, 493 U.S. 1075 (1990). Plaintiffs having established Defendant acted willfully and with an intent to deceive consumers (*see, e.g.*, ¶¶ 134-135, 152, 182-184, ) an award of costs and attorneys' fees is appropriate under the Lanham Act. *See, e.g., BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1099 (7th Cir. 1994) (affirming district court's award of attorneys' fees after finding that defendant's infringing conduct, though not "malicious," was nevertheless "deliberate.". Attached as **Exhibit A** is the Declaration of Joseph N. Casas setting for the total attorney fees and costs to date, including the fees relating to this motion totaling $8,651.74.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant its motion for default judgment on each count of the Complaint discussed herein, grant Plaintiffs' damages, costs and attorneys' fees as set forth on the proposed judgment, grant a permanent injunction forbidding Defendant from using Plaintiffs' Images in advertising, and grant such other and further relief as this Court deems just and proper.

Dated: February 3, 2023

Respectfully Submitted,

**THE CASAS LAW FIRM, P.C.**
By: */s/ Joseph N. Casas*
Joseph N. Casas, Esq.
Illinois Bar No. 6274674
California Bar No. 225800
11844 Bandera Road, Suite 500
Helotes, Texas 78023
P: 855-267-4457 (ext. 101)
Email: joseph@talentrights.law

John V. Golaszewski, Esq.
**THE CASAS LAW FIRM, P.C.**
1740 Broadway, 15th Floor
New York, New York 10019

P: 855-267-4457 (ext. 103)
E-mail: john@talentrights.law

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I CERTIFY that on the 3rd day of February 2023, I filed the foregoing electronically through the CM/ECF system, and will mail filed copies via USPS Priority Mail to Defendant's Registered Agent and to the Club's Physical Address, as more fully reflected on the Notice of Electronic Filing as follows:

MAR-LAU ENTERPRISES, INC.
d/b/a M.G.M'S RESTAURANT & LOUNGE
c/o Mark G. Martinez *(Registered Agent)*
2831 Curtis Street
Denver, Colorado 80205

AND

MAR-LAU ENTERPRISES, INC.
d/b/a M.G.M'S RESTAURANT & LOUNGE
4801 Morrison Rd,
Denver, Colorado 80219
*(Club's Physical Address)*

*/s/ Linda Davila*
Linda Davila (Paralegal)