IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-02517-CNS-STV

JESSICA ROCKWELL;
CLAUDIA SAMPEDRO;
TARA LEIGH PATRICK, a/k/a CARMEN ELECTRA;
PAOLA CANAS;
ROSA ACOSTA; and
URSULA MAYES,

Plaintiffs,

v.

MAR-LAU ENTERPRISES, INC. d/b/a M.G.M.'S RESTAURANT & LOUNGE; and DOES 1–10,

Defendants.

---

**ORDER**

---

Before the Court is Plaintiffs' Motion for Default Judgment. ECF No. 36. For the reasons set forth below, the motion is GRANTED.

## I. BACKGROUND[1]

The action arises from Defendant Mar-Lau's unauthorized use of Plaintiffs' respective images and likenesses in its promotional materials. The Court set forth the

[1] The background facts in this Order are drawn from Plaintiffs' Complaint. ECF No. 1. Due to the Clerk of Court's entry of default against Defendant, *see* ECF No. 10, the Complaint's allegations are deemed admitted. *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).

facts underlying this dispute in a previous Order, and it incorporates those facts here. *See* ECF No. 25 at 2–3.

On December 16, 2023, a copy of the summons and complaint were served on Defendant Mar-Lau through its registered agent. ECF No. 33. Defendant Mar-Lau did not file an answer or responsive pleading by the response deadline of January 8, 2024. ECF No. 35. Plaintiffs then filed the instant Motion for Default Judgment on January 22, 2024. ECF No. 36.

## II. LEGAL STANDARD

A court may enter default judgment against a party that has failed to plead or otherwise defend an action brought against it. Fed. R. Civ. P. 55(b)(2). The decision to enter the default judgment is "committed to the district court's sound discretion." *Olcott*, 327 F.3d at 1124 (citations omitted). "Strong policies favor resolution of disputes on their merits," and default judgment should be "available only when the adversary process has been halted because of an essentially unresponsive party." *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (citations omitted).

When addressing a motion for default judgment, a court must first evaluate and establish its jurisdiction. *See, e.g. Bixler v. Foster*, 596 F.3d 751, 761 (2010). To enter default judgment, a court must have both personal jurisdiction over each defaulting defendant and subject matter jurisdiction over the action. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986). The second step of a court's default judgment inquiry is to evaluate whether the plaintiff's pleadings support a judgment on the claims alleged. *Tripodi v. Welch*, 810 F.3d 761, 765 (10th Cir. 2016). The complaint "must contain

either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1383, 1386 (10th Cir. 2008) (quotations omitted). In ruling on a motion for default judgment, courts accept all well-pleaded factual allegations in the complaint as true. *Olcott*, 372 F.3d at 1125. Undisputed facts alleged in the affidavits or exhibits are also deemed true. *Id.* at 1124.

Allegations regarding the amount of damages are deemed true only to the extent they are "capable of mathematical calculation." *Marcus Food Co. v. Dipanfilo*, 671 F.3d 1159, 1172 (10th Cir. 2011); *see also Hunt v. Inter-Globe Energy Inc.*, 770 F.2d 145, 148 (10th Cir. 1985). Where the amount claimed is not a "liquidated sum or one capable of mathematical calculation," a court is required to hold an evidentiary hearing to determine the damages. *Venable v. Haislip*, 612 F.2d 287, 300 (10th Cir. 1983); *see Marcus Food*, 671 F.3d at 1171–72 (determining that the damages asserted in the complaint were sufficiently calculable to not require an evidentiary hearing).

## III. ANALYSIS

Having considered the complaint, the instant motion, the entire case file, and relevant legal authority, the Court grants Plaintiffs' Motion for Default Judgment.

### A. Jurisdiction

Before reaching the merit of Plaintiffs' claims, the Court must determine whether it has subject matter jurisdiction to decide Plaintiffs' claims and personal jurisdiction over Defendant Mar-Lau. *Williams*, 802 F.2d at 1203.

*1. Subject Matter Jurisdiction*

Plaintiffs assert that the court has original federal question jurisdiction over the claims in this action under 28 U.S.C. § 1125(a)(1)(A)(B). *See* ECF No. 36 at 3; *see also* ECF No. 1 at 16. Plaintiffs further assert that the Court has supplemental jurisdiction over the Colorado state law claims under 28 U.S.C. § 1367. The Court agrees.

A district court has subject matter jurisdiction over an action where there is either a federal question at issue or diversity between the parties. *See* 28 U.S.C. §§ 1331, 1332. 28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction over all civil actions under the Constitution, laws, or treaties of the United States." For supplemental jurisdiction, 28 U.S.C. § 1367 gives a court jurisdiction over "all other claims that are so related to the claim in the action within such original jurisdiction that they form part of the same case or controversy."

In the instant case, Plaintiffs bring a claim of false advertising, and a similar claim styled as "false endorsement,"[2] under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) & (A). *See* ECF No. 1, ¶ 16. Because the Lanham Act creates a federal cause of action, § 1331 authorizes this Court's exercise of jurisdiction. *Cf.* 28 U.S.C. § 1338(a) (granting district courts original jurisdiction over civil actions that arise under federal law relating to trademarks). Likewise, Plaintiffs have alleged a common law claim for misappropriation of likeness under the exact same facts as those underlying their Lanham Act claims.

[2] The Court reads this to refer to a "false association" claim under § 1125(a)(1)(A) and will refer to it throughout this Order as such. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014) (explaining that the Lanham Act "creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)").

Because Plaintiffs' federal and state-law claims clearly "form part of the same case or controversy," § 1367 authorizes the Court to exercise supplemental jurisdiction over Plaintiffs' state common law claims. Subject matter jurisdiction over all of Plaintiffs' claims is therefore appropriate pursuant to §§ 1331 and 1367.

2. *Personal Jurisdiction*

Plaintiffs further assert that this Court has personal jurisdiction over Defendant. ECF No. 36 at 4. A plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). When moving for default judgment, a plaintiff "need only make a *prima facie* showing" of personal jurisdiction assuming the motion is decided based on written material and affidavits. *Dennis Garberg & Assocs., Inc, v. Pach-Tech Int'l Corp.*, 115 F.3d 767, 773 (10th Cir. 1997). A court must determine (1) the adequacy of the service, including "whether any applicable statue authorizes service of process," and (2) "whether the existence of jurisdiction comports with due process." *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). For the reasons below, the Court determines that Plaintiffs have met these jurisdictional requirements.

a. *Service of Process*

To properly exercise personal jurisdiction over a defendant, a court must ensure that service of process was adequate. *Reg'l Dist. Council v. Mile High Rodbusters Inc.*, 82 F. Supp. 3d 1235, 1241 (D. Colo. 2025). Service of process upon a corporate entity may be accomplished by "delivering a copy of summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to

receive service of process. . .” Fed. R. Civ. P. 4(h)(1)(B). Here, on December 16, 2023, Plaintiffs served Defendant Mar-Lau, a corporate entity, by leaving a copy of the summons and complaint with Mar-Lau’s registered agent, Mark Martinez (*see* ECF No. 33). The Court thus finds that Defendant was properly served in accordance with Rule 4.

*b. Due Process*

The Court must also determine whether exercising personal jurisdiction over Defendant comports with due process. Under Federal Rule of Civil Procedure 4(k)(1)(A), the district court is required to apply the law regarding personal jurisdiction of the state in which the district is located. *Dudnikov*, 514 F.3d at 1070. The long-arm statute of Colorado permits the maximum jurisdiction so long as it comports with the Due Process Clause. *Id.* Broadly speaking, there are two types of personal jurisdiction—general and specific jurisdiction. And pertinent here, general jurisdiction is permitted when the defendant’s connections with the forum state are “so continuous and systematic” that it is “essentially at home” in that state. *Lumen Techs. Svc. Grp., LLC v. CEC Grp. LLC*, No 23-cv-00253-NYW-KAS, 2023 WL 5822503 at *2 (D. Colo. Sept. 8, 2023) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction is determined for an individual based on the individual’s domicile. *Goodyear*, 564 U.S. at 924. For a corporation, general jurisdiction lies either where the corporation is incorporated or where its principal place of business is located. *Id.*

Put simply, at all relevant times, Defendant Mar-Lau was incorporated in, and had its principal place of business in, Colorado. ECF No. 1, ¶ 18; *see also* ECF No. 36 at 4.

As such, Defendant Mar-Lau is essentially at home in Colorado, thereby giving the Court general jurisdiction.

**B. Default Judgment**

The Court must next decide "whether the unchallenged facts constitute legitimate cause of action," such that default judgment should enter. *Bixler*, 596 F.3d at 762. If a judgment of default enters, the Court must also ascertain the amount of damages to which Plaintiffs are entitled. *See Eighth District Electrical Pension Fund v. Teter Indus. Inc.*, No. 1:22 cv-02521-CNS, 2023 WL 3819339 at *5 (D. Colo. June 5, 2023).

*1. Claim One—False Advertising*

Plaintiffs contend that they have established that Defendant is liable for false advertising under the Lanham Act. ECF No. 36 at 6; ECF No. 1, ¶¶ 130–45. Based on the unchallenged facts, the Court agrees. Pursuant to § 1125(a)(1)(B), Plaintiffs must allege:

> (1) that [the] defendant made materially false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff.

*Intermountain Stroke Center, Inc. v. Intermountain Health Care*, Inc., 638 F. App'x 778, 784 (10th Cir. 2016).

As to the first "materially false or misleading representation of fact" element, Plaintiffs assert that Defendant Mar-Lau used their images to create a misleading perception that they were affiliated in some way with M.G.M. by using their images on social media to promote events and M.G.M.'s business, thereby implying that Plaintiffs

had association with M.G.M.'s events and business. ECF No. 1, ¶¶ 65, 76, 87, 98, 109. Plaintiffs further assert that Defendant Mar-Lau manipulated their images to create a misleading sense that Plaintiffs were either promoting or endorsing M.G.M.'s events and business through social media posts. *Id.* As to the second "in commerce" element, Plaintiffs assert that Defendant Mar-Lau used their images and/or respective identities to advertise, promote, and market M.G.M.'s events. *Id.*; *see id.,* ¶¶ 66, 77, 88, 99, 110. Plaintiffs assert that these images were used with the intention of enticing consumers to patronize M.G.M.'s. *Id.,* ¶¶ 136–37. As to the third element, Plaintiffs assert that their modeling careers use the same marketing channels as Defendant Mar-Lau's, and that their business endeavors overlap. *Id.,* ¶ 151. Plaintiffs further assert that this overlap in their marketing channels and businesses have created confusion and falsely implied Plaintiffs' endorsement of, or association with, M.G.M.'s business. *Id.,* ¶ 152; *see also id.,* ¶ 65. To satisfy the fourth "injury" element, Plaintiffs variously assert that: (i) their reputations and brands have suffered and continue to suffer "irreparable harm" by being falsely associated with M.G.M.'s; (ii) Defendant Mar-Lau has never paid nor offered to pay any of the Plaintiffs for use of their images; (iii) this unauthorized use by Defendant Mar-Lau encouraged or permitted others to misappropriate Plaintiffs' images; and (iv) this false connection with M.G.M's embarrasses Plaintiffs and harms their overall images and reputations. *See, e.g., id.,* ¶¶ 71–73.

Taking these allegations as true, as the Court must, Plaintiffs have sufficiently established that Defendant Mar-Lau engaged in false advertising with the meaning of § 1125(a)(1)(B). Plaintiffs are therefore entitled to relief on Count One.

*2. Claim Two—False Association*

Plaintiffs further claim that Defendant Mar-Lau is liable under the Lanham Act for false association. Based on the undisputed allegations, the Court agrees. Section 1125(a)(1)(A) creates liability for statements about "affiliation, connection, or association of goods and services that create a false or misleading description or representation of fact." § 1125(a)(1)(A). The elements of a false association claim are: "(1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used an identical or similar mark in commerce; and (3) that the defendant's use is likely to confuse consumers." *Trial Lawyers College v. Gerry Spence Trial Lawyers College at Thunderhead Ranch*, No. 1:20-CV-80-JMC, 2022 WL 2718075, at *12 (D. Wyo. Mar. 29, 2022) (quoting *1-800 Contacts Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013)). Put differently, a plaintiff must allege that the defendant's misuse of his or her mark is likely to confuse consumers "as to the plaintiff's sponsorship of approval of the product." *Crocs, Inc. v. Effervescent, Inc.*, No. 06-CV-00605-PAB-KMT, 2021 WL 4170997, at *3 (D. Colo. Sept. 14, 2021); *see also Amazon Inc. v. Cannondale Inc.*, No. 99-CV-00571-EWN-PAC, 2000 WL 1800639, at *7 (D. Colo. July 24, 2000). For Lanham Act purposes, a mark can include a person's identity. *Trial Lawyers College*, 2022 WL 2718075 at *9 (quoting *Arnold v. Treadwell*, 642 F. Supp. 2d 723, 730 (E.D. Mich. 2009)).

As to the first element of this claim, Plaintiffs assert that their images and likenesses are protectable marks that have acquired secondary meaning by Plaintiffs' sale of their respective images and identities to brands for profit. ECF No. 1, ¶ 150. Plaintiffs further assert that their use of their own images, and their acquired secondary

meaning through this use, has granted them protection of their images. *Id.,* ¶¶ 130, 147. As to the second element, Plaintiffs assert that Defendant Mar-Lau used well-lit and clear images of each Plaintiff, using the identical mark or image that each Plaintiff uses in connection with their own respective brand and business. *See, e.g., id.,* ¶ 120. As discussed previously, to establish the third "consumer confusion" element, Plaintiffs assert that they compete in the same market as Defendant Mar-Lau and their marketing channels and individual endeavors overlap. *Id.,* ¶¶ 151–53. Plaintiffs further assert that the images distributed by Defendant Mar-Lau create the impression that Plaintiffs either work for or are associated with M.G.M.'s in order to attract consumers to Defendant Mar-Lau's business. *Id.,* ¶¶ 65, 76, 87, 98, 109.

Taking the alleged facts as true, as the Court must, Plaintiffs have sufficiently established that Defendant Mar-Lau engaged in false association within the meaning of § 1125(a)(1)(A). Accordingly, Plaintiffs are entitled to relief on Count Two.

3. *Claim 3—Misappropriation of Likeness*

Plaintiffs further assert that Defendant Mar-Lau has committed misappropriation of likeness, a Colorado common law tort. *Joe Dickerson & Assocs., LLC. v. Dittmar*, 34 P.3d 995, 997 (Colo. 2001). Considering the undisputed allegations, the Court agrees. To successfully prove this claim, Plaintiffs must meet the following elements: (1) the defendant used the plaintiff's name or likeness; (2) the use of the plaintiff's name or likeness was for the defendant's own purpose or benefit, commercially or otherwise' (3) the plaintiff suffered damages; and (4) the defendant caused the damages incurred. *Id.*

To establish the first element, Plaintiffs assert that Defendant Mar-Lau used well-lit images in which Plaintiffs are clearly identifiable through their faces and bodies on M.G.M.'s social media pages and websites. ECF No. 1, ¶¶ 65, 76, 87, 98, 109. As to the second element, Plaintiffs assert that these images were used to promote and market specific events hosted by M.G.M.'s through social media posts that created the false impression that Plaintiffs were in some way associated with or endorsing these events. *Id.* As to the third element, Plaintiffs assert that they have suffered damages through harm to their reputations by embarrassment of being associated with M.G.M.'s, loss of profits that are directly attributable to M.G.M.'s unauthorized use of their images and likenesses, as well as encouragement of others to misappropriate their images. *See, e.g., id.,* ¶¶ 126–128. As to the fourth element, Plaintiffs assert that Defendant Mar-Lau's misappropriation of their images directly caused these damages. *Id.*

Taking the above assertions as true, Plaintiffs have established that Defendant Mar-Lau used their images and likenesses in commerce for its own benefit. Defendant Mar-Lau is therefore liable under Plaintiffs' Count Three, misappropriation of likeness under Colorado common law.

*4. Claim Four—Negligence and Respondeat Superior*

Here, Plaintiffs allege that Defendant Mar-Lau is liable for negligence under the theory of vicarious liability, alleging broadly that Defendant Mar-Lau failed to maintain polices that would have prevented M.G.M.'s employees from unauthorized, nonconsensual use of Plaintiffs' intellectual property. ECF No. 36 at 12. Previously, however, the Court found that this theory of liability is not recognized in Colorado. *See*

ECF No. 23. As such, the Court in its discretion declines to enter default judgment as to this claim.

### 5. *Statutory Damages*

In support of their claim for Lanham Act damages, Plaintiffs have provided expert opinion testimony from Stephen Chamberlin, who evaluated the fair market value of Plaintiffs' images and likenesses and determined the compensation that each respective Plaintiff was entitled to for the time Defendant Mar-Lau wrongfully used her image and likeness. ECF No. 36-2. To evaluate fair market value, Mr. Chamberlin referenced each model's previous works, social media following, and prior business associations. Mr. Chamberlin also calculated these amounts based on the time Defendant Mar-Lau wrongfully used each individual Plaintiffs' images and likenesses. Mr. Chamberlin determined the following:

(1) Jessica Rockwell's actual or compensatory damages are at a minimum $15,000.

(2) Claudia Sampedro's actual or compensatory damages are at a minimum $20,000.

(3) Tara Leigh Patrick's actual or compensatory damages are at a minimum $150,000.

(4) Paola Cañas' actual or compensatory damages are at a minimum $15,000.

(5) Rosa Acosta's actual or compensatory damages are at a minimum $22,500.

(6) Ursula Mayer's actual or compensatory damages are at a minimum $15,000.

In total, Mr. Chamberlin calculated Plaintiffs' damages at $237,000. Having reviewed Mr. Chamberlin's expert report and the bases upon which he calculated fair market value, the Court finds that this amount is reasonable.

*6. Attorney's Fees and Costs*

15 U.S.C. § 1117(a) allows Plaintiffs to receive attorney's fees and costs incurred from this action. This provision of the Lanham Act entitles a prevailing plaintiff to recover fees in "exceptional" cases where a defendant's actions are "malicious, fraudulent, deliberate, or willful." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1232 (10th Cir. 2000). Here, Plaintiffs sufficiently demonstrated that Defendant Mar-Lau misappropriated their images willfully and fraudulently to deceive consumers *See* ECF No. 1, ¶¶ 54–55, 132, 138, 140, 154–55, 171. This entitles them to attorney's fees.

To determine a reasonable fee award, a court conducts a lodestar calculation as set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This calculation requires multiplying the number of attorney hours expended to resolve an issue or perform a task by a reasonable hourly billing rate. *Reg'l Dist. Council*, 82 F. Supp. 3d at 1245. The court reviews the number of hours expended by reviewing the billing entries to ensure that counsel exercised proper billing judgment. *Id.* Once the court determines the lodestar, it may "adjust the lodestar upward or downward to account for the particularities" of the work performed. *Id.*

An attorney, when submitting billing entries and determining what is a reasonable time to perform a given task should consider the following factors: (1) the complexity of the case; (2) the number of reasonable strategies pursued; (3) the responses

necessitated by the maneuvering of the other side; and (4) the potential duplication of services cause by the presence of multiple attorneys when one would suffice. *Id.* at 1246. Counsel must make a good faith effort to exclude hours or costs that are excessive, redundant or otherwise unnecessary. *Hensley*, 461 U.S. at 434. Ultimately, counsel seeking an award of attorney's fees must demonstrate that it exercised proper billing judgment and that the amount it seeks is reasonable.

Here, Plaintiffs' attorneys request $11,536.67 in fees and costs to date. ECF No. 36 at 14. In support of this request, Plaintiffs' attorney has supplied documentation of his bill calculations. ECF No. 36-1. Mr. Casas's hourly rate is $600 per hour and Ms. Davila, a paralegal, has an hourly rate of $100 per hour. Upon reviewing the distribution of work between Mr. Casas and Ms. Davila, as well as the recorded tasks, the Court finds their rates and time spent to be reasonable. The total amount required for their work is $10,636.67. Further, the work performed by the expert witness, Mr. Chamberlin, comes to an additional $900. Because the expert witness provided necessary testimony and the Court does not find his fee to be excessive, this additional request is reasonable. In total, the Court will enter judgment against Defendant Mar-Lau for $11,536.67 in attorney's fees and costs.

## IV. CONCLUSION

Consistent with the above analysis, Plaintiff's Motion for Default Judgment, ECF No. 36, is GRANTED. The Court therefore ORDERS that:

(1) Default judgment enters against Defendant Mar-Lau in the following amounts:

a. Plaintiff Jessica Rockwell: $15,000;

b. Plaintiff Claudia Sampedro: $20,000;

c. Plaintiff Tara Leigh Patrick: $150,000;

d. Plaintiff Paola Cañas: $15,000;

e. Plaintiff Rosa Acosta: $22,500;

f. Plaintiff Ursula Mayer: $15,000;

g. Reasonable attorney's fees and costs in the amount of $11,536.67; and

(2) The Clerk of the Court is directed to enter FINAL JUDGMENT and close the case.

Dated this 13th day of March 2025.

BY THE COURT:

____________________________________

Charlotte N. Sweeney
United States District Judge